[Civ. No. 5548.   Third Appellate District.—December 31, 1936.]

ANTHONY LA ROSA et al., Respondents, v. W. J. GLAZE et al., Appellants.

356

Hjelm & Hjelm for Appellants.

Vernon F. Gant for Respondents.

THOMPSON, J.—The defendants have appealed from a judgment which was rendered against them in a suit for damages for the breach of a contract to sell grapes.

It is contended the findings and judgment are not supported by the evidence with respect to the quantity of grapes which were produced and in regard to the measure of damages; that Mrs. W. J. Glaze was erroneously made a party defendant; that there is no evidence supporting the finding that she was authorized to act as agent of her husband in signing the agreement to sell the grapes, and that the contract is void for the reason that it was procured by the agent of a broker of farm produce without having been licensed therefor, contrary to the provisions of section 1263 of the Agricultural Code of California.

October 31, 1933, A. B. Badal, acting as agent for the plaintiffs, a copartnership which was engaged in purchasing grapes as a produce broker or commission merchant, procured Mrs. W. J. Glaze to sign a written contract, in behalf of her husband, without his knowledge or authorization, to sell a crop of grapes. The evidence is undisputed that the agent then held no license as such, as required by section 1263 of the Agricultural Code of California. The contract provides in part that:

"Mr. W. J. Glaze, the seller, has sold and the buyer has bought all the hereinafter mentioned fruit crop suitable for Eastern shipment . . . being free from black mildew, red berries, water berries, mold, dry and rain damage produced during the current year on his ranch, Turlock, . . . Variety, Alicanti (grapes); Acreage, 10; Sugar content, 22, Est. tonnage, 40; Price per ton, $5.50."

No cash was paid for the crop or for any portion thereof. Mr. Glaze had previously refused to sell the grapes to the plaintiffs. A few days before Badal procured the contract from Mrs. Glaze, her husband told him he had no grapes to sell. He subsequently sold the crop to another purchaser. This suit was brought against W. J. Glaze in October, 1934, for damages for breach of the contract to sell the grapes. The complaint alleges that Mrs. Glaze acted as the agent of

her husband in executing the contract. All of the material allegations of the complaint were denied. At the trial, over the objection of the defendant, Mrs. Glaze was made a party defendant in the action. The cause was tried by the court sitting without a jury. Findings were adopted favorable to the plaintiffs upon all the material issues. Judgment was accordingly rendered against the defendants for damages in the sum of $340. From that judgment the defendants have appealed.

The evidence is undisputed that the grape crop which is the subject of this litigation was the community property of Mr. and Mrs. Glaze. The husband, therefore, had the management and control of the property. (Secs. 161a and 172, Civ. Code; 13 Cal. Jur. 819, sec. 25.) The evidence is also uncontradicted that the wife was not authorized by her husband, either as his agent or otherwise, to sign the contract for the sale of their grapes. He had previously told the plaintiffs' agent that he had no grapes to sell. Nor is there any evidence that he thereafter ratified the contract. The purported contract was therefore unauthorized and void.

Since the complaint alleges that W. J. Glaze was the owner of the property and that Mrs. Glaze executed the agreement of sale as his agent, that she did not contract in her own name, and that her husband was not an undisclosed principal in the transaction, she is relieved of personal liability. Under an agreement wherein an agent does not assume to contract in his own name, and the identity of the principal is known to the other party, the agent may not be held to be personally liable for the obligation thus incurred. (*Marks* v. *Rucker & Co.*, 53 Cal. App. 568 [200 Pac. 655].) In the case last cited it is said in that regard:

"To relieve the agent of liability, it is sufficient that the other contracting party have actual knowledge of the identity of the principal; it is immaterial how such knowledge was acquired."

Mrs. Glaze was therefore not a proper party to the suit.

Assuming, without so deciding, that the contract was valid, under the circumstances of this case, the burden was on the plaintiffs to show the quantity of grapes contracted for and the damages sustained by reason of the failure to deliver the fruit. (55 C. J. 401, sec. 386.) But since the agreement was to purchase "*All the . . . fruit crop*

suitable for Eastern shipment'', which was estimated in the contract at forty tons, there was a *prima facie* showing that the crop which was produced aggregated forty tons. Since the defendant W. J. Glaze sold the grapes to another person and possessed the knowledge of the exact quantity produced, he may not complain of the acceptance of the estimated quantity as the amount of the crop which was produced. If the defendant contended that he produced less than forty tons of grapes he was in a better position to establish that fact than were the plaintiffs.

We are of the opinion the record contains no tangible evidence of the damages sustained by the plaintiffs because of the defendants' failure to deliver the crop of grapes. The measure of damages sustained by a purchaser of property who is deprived of the possession thereof through the fault of the seller is declared by section 3354 of the Civil Code. It reads:

''In estimating damages, . . . the value of property, to a buyer or owner thereof, deprived of its possession, is deemed to be the price at which he might have bought an equivalent thing in the market nearest to the place where the property ought to have been put into his possession, and at such time after the breach of duty upon which his right to damages is founded as would suffice, with reasonable diligence, for him to make such a purchase.

The same rule with respect to ascertaining the measure of damages under such circumstances is declared by the text in 22 California Jurisprudence, page 1043, section 107, as follows:

''If the buyer paid nothing to the seller, he is entitled, according to the rule of the statute, to recover the difference between the contract price and the market price.''

The only evidence of the damages sustained by the plaintiff was the testimony that the particular crop of grapes covered by this contract had been sold in the east for $30 per ton f. o. b. at Modesto, and that it would cost $16 per ton to pick and deliver them at the railway station. That would leave plaintiff a profit of $8.50 per ton, provided the grapes were in the condition contracted for. The contract calls for grapes containing 22 per cent sugar content and free from red berries and mold. The evidence, however, is uncontradicted that this crop of grapes actually contained only

19 per cent sugar content, and that no grapes in that *vicinity* contained a higher test of sugar content that year. The evidence also shows without conflict that one-third of this particular crop of grapes was red berries. Mr. Bettencourt, who bought and packed the grapes, testified in that regard: "The grapes, I would say, were about one-third red and the balance black. . . . Red berry is something that can't be shipped, and we picked the grapes and we packed them in the shed."

It is true that the conditions with respect to the sugar content of the grapes and their freedom from red berries were inserted for the benefit of the purchasers and might be waived by them. But the fact remains that the only evidence of damages which the record contains is the statement that the crop which was contracted for had been sold in the east for $30 per ton. There is no evidence of the market value of grapes containing 19 per cent of sugar content, one-third of which are red berries. In fact, the evidence is to the effect that red berries cannot be shipped at all. The record, therefore, contains no evidence of the market value of the grapes and no evidence of the measure of damages. The findings and judgment of the court are not supported by the evidence in that regard.

█ Finally, the appellants contend the contract was void for the reason that it was procured and executed by the agent of the plaintiffs, contrary to the provisions of section 1263 of the Agricultural Code of California. It was admitted the plaintiffs had no license in 1933 as agent, commission merchant or dealer in farm products as required by section 1263, *supra*. Section 1273 of the same code makes it a misdemeanor for one to act as such agent, broker, commission merchant or dealer in farm commodities without having first procured a license so to do. The licensing of agents, brokers and commission merchants who are engaged in handling agricultural products as provided by the Agricultural Code of California is clearly intended for the regulation of traffic in farm commodities for the general protection and benefit of the public. It has been uniformly held that contracts procured in violation of such regulatory license provisions of the law are void. (*Levinson* v. *Boas,* 150 Cal. 185 [88 Pac. 825, 11 Ann. Cas. 661, 12 L. R. A. (N. S.) 575]; *Van Wyke* v. *Burrows,* 98 Cal. App. 415, 419 [277 Pac.

190]; *Tatterson* v. *Kehrlein*, 88 Cal. App. 34, 48 [263 Pac. 285]; *Payne* v. *De Vaughn*, 77 Cal. App. 399, 403 [246 Pac. 1069].)

The judgment is reversed.

Pullen, P. J., and Plummer, J., concurred.